IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CITIZENS FOR A STRONG OHIO**, *et al.*, | : | **CASE NO. C2 03-0599** |
| | : | |
| **Plaintiffs**, | : | **JUDGE SMITH** |
| | : | |
| v. | : | **MAGISTRATE JUDGE KEMP** |
| | : | |
| **OHIO ELECTIONS COMMISSION**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

---

## I.  INTRODUCTION

This case concerns Ohio statutes that regulate campaign advertisements within the State of Ohio, specifically the applicability of long-standing statutes regulating campaign practices to the relatively recent phenomenon of issue advocacy. The question currently posed is: should this Court accept Plaintiffs' invitation to interpret Ohio statutes when the named parties are already involved in ongoing state proceedings? The answer is no: (1) the Ohio Elections Commission has the right to conduct its proceedings without interference from a federal court; (2) the Ohio courts, not a federal court, should review decisions made by the Commission; and (3) the Ohio Supreme Court has the right to have the last word regarding the interpretation of Ohio statutes. The remedy for an alleged error in law by a state administrative tribunal (either actual or anticipated) is to appeal that decision through the State court system, not to obtain a declaratory judgment from a federal court instructing the state tribunal in how to interpret the law.

## II. LAW AND ARGUMENT

### A. This Court Should Abstain Pursuant To *Younger v. Harris* In Order To Refrain From Interfering With Ongoing Proceedings Before The Ohio Elections Commission.

Plaintiffs CSO and the Ohio Chamber are admittedly parties to a matter currently pending before the Commission. Complaint ¶¶25-31. In this case, Plaintiffs seek a declaration that "the provisions of Ohio Revised Code 3517 and Chapter 3599 cannot be applied to 'private' individuals and corporations when they are engaging in 'issue advocacy' as defined by the United States Supreme Court." Complaint, Prayer for Relief. Plaintiffs further seek a declaration that the First Amendment applies to the regulation of political speech, that the Commission must defer to "the scope of First Amendment protections of 'issue advocacy' enunciated by the United States Supreme Court," that the Commission "must refrain from adopting a subjective, *ad hoc* interpretation of 'express advocacy,'" and that the Commission "must refrain from applying any new interpretation retroactively." *Id.*

There can be no doubt but that these declarations are aimed at preventing the Commission from ruling against CSO and the Ohio Chamber in the pending proceeding. As such, *Younger* applies to the same extent that it would if Plaintiffs expressly asked this Court to order the Commission to rule in a certain manner. *See Samuel v. Mackell*, 401 U.S. 66, 71-72 (1971); *Carroll v. City of Mt. Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998).

Plaintiffs do not dispute that *Younger* abstention applies to proceedings before the Ohio Elections Commission. *See Chamber of Commerce of the United States v. Ohio Elections Commission*, 135 F. Supp.2d 857, 864 (S.D. Ohio 2001). Instead, Plaintiffs argue that *Younger* does not apply on the facts of this case because they seek only

2

prospective relief and because the John Doe plaintiffs are not parties to the proceedings currently before the Commission. Plaintiffs are correct that *Younger* does not normally preclude litigation by parties who are strangers to the state proceedings (although that is not necessarily so here); but they are wrong that CSO and the Ohio Chamber can avoid the force of *Younger* merely by characterizing their request for relief as prospective.

There is no recognized exception to *Younger* for cases that allegedly involve prospective relief. *See Wisconsin Manufacturers & Commerce v. Wisconsin Elections Board*, 978 F. Supp. 1200, 1210 (W.D. Wis. 1997). Where *Younger* squarely applies, a federal court must abstain, absent extraordinary circumstances, none of which apply here. *Younger v. Harris*, at 53-54. A district court's decision as to whether or not to abstain under *Younger* is reviewed de novo. *Traughber v. Beuchane*, 760 F.2d 673, 676 (6th Cir. 1985).

This case is remarkably similar to *Wisconsin Manufacturers & Commerce v. Wisconsin Elections Board*. In that case, the plaintiffs filed a federal court action seeking declaratory, injunctive, and monetary relief after the Wisconsin Elections Board held that the plaintiff organizations had violated Wisconsin regulations regarding political action committees by running advertisements that the Board held were subject to regulation. In that case, as in this one, the question was whether long-standing statutes (the statutes were enacted in 1973) applied to so-called issue advocacy. The federal action was filed after the Wisconsin Board held that the advertisements violated the law, but before Plaintiffs had to comply with the Board's order to file the required reports. *Wisconsin Manufacturers & Commerce v. Wisconsin Elections Board*, 978 F. Supp. at 1204.

In this context, the district court granted the defendant's motion to abstain pursuant to *Younger*. The court held that, as in this case, the plaintiffs "overstate the

3

district court's discretion to refrain from abstaining under *Younger* and exaggerate the circumstances that justify exercising this discretion. When the conditions for *Younger* are satisfied, as they are in this case, 'abstention is not only permissible but expected.'" *Id.* at 1209. The court, rejecting the same arguments made here, held that there is no exception to *Younger* "for cases in which the relief sought is 'wholly prospective.'" *Id.* at 1210.

Plaintiffs' argument to the contrary is without merit. In support of their argument for this new exception to *Younger*, Plaintiffs cite two cases, neither of which is factually on point with this case. First, in *Wooley v. Maynard*, 430 U.S. 705 (1977), the Court held simply that *Younger* did not apply because there was no ongoing state proceeding at the time that the federal court action was filed. *See Hawaii Housing Authority v. Midkiff*, 463 U.S. 1323, 1326 (1983) ("In Wooley, the three state proceedings had already concluded, and the federal injunction had no effect on them."); *Parker v. Turner*, 626 F.2d 1, 5-6 (6th Cir. 1980) (detailed discussion of *Wooley* and the fact that the Court's holding in that case turned on the fact that the state court actions had fully terminated); *United Books, Inc. v. Conte*, 739 F.2d 30 (3rd Cir. 1984) (distinguishing *Wooley* on the basis that there was no pending state court adjudication).

Second, *Loftus v. Township of Lawrence Park*, 764 F. Supp. 354 (W.D. Pa. 1991) is also distinguishable. In that case, the question presented, three weeks before an election, was whether a local candidate with limited resources was permitted to place yard signs. Assuming for the sake of argument that that decision was correctly decided, it is clearly limited to its unique facts as held by the court in *Wisconsin Manufacturers & Commerce v. Wisconsin Elections Board*, 978 F. Supp. at 1210, and those facts are nothing like the facts of this case. In *Loftus*, the plaintiff was about to suffer irreparable

4

harm because the signs in question were his only means of effectively presenting his message and the election was in three weeks. Plaintiffs in this case are certainly not without resources or other means of expressing their political message, nor are we in the final weeks before the November 2004 election. Plaintiffs are not poised to air advertisements, but instead are complaining about the speculative effect that the ongoing proceedings have on their ability to raise funds.

Nor is there an exception to *Younger* for cases involving the First Amendment, an argument that was also expressly rejected in *Wisconsin Manufacturers & Commerce*. *Id.* at 1210. As the district court recognized in that case, this argument was first rejected in *Younger* itself, in which the Court held that "a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." 401 U.S. at 51. *See also United Books, Inc. v. Conte*, 739 F.2d 30 (3rd Cir. 1984) (abstention appropriate in case involving First Amendment rights of adult bookstore).

Finally, although those who are not parties to an ongoing state court proceeding are not typically barred by *Younger* from filing a federal court action, that is not necessarily the case where supposed "strangers" to the state court litigation have interests that are intertwined with the parties to the state court proceeding. In *Wisconsin Manufacturers & Commerce*, the court held that abstention also prevented Plaintiffs ABC Corporation and XYZ Corporation, who contributed to Plaintiff WMC Issues Mobilization Council, from pursuing an action for declaratory and injunctive relief because their interests were intertwined with those of WMC Issues Mobilization Council and Americans for Term Limits, which were parties to the proceedings before the Wisconsin Board. *Id.* at 1211.

5

In this case, Plaintiff Alpha Corporation "has contributed to organizations that engage in independent issue advocacy endeavors that do not expressly advocate the election or defeat of a candidate," and Plaintiff Omega Corporation is an Ohio corporation with its principal place of business in Ohio that "has not previously made such contributions but desires to do so in the future." Complaint, ¶1. As such, their interests only have sufficient concreteness to justify going forward with litigation when considered in the context of the claims brought by Plaintiffs CSO and the Ohio Chamber, and this case should be dismissed in its entirety.

### B. *Pullman* Abstention Dictates That This Court Should Refrain From Interpreting The Ohio Statutes.

Even if *Younger* did not apply, this Court would need to stay this action pursuant to *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), because the interpretation of the underlying state statutes may either avoid the need to decide the constitutional issue or substantially modify the issue. *See Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983).

The Ohio Supreme Court has not yet interpreted these long-standing Ohio statutes as applied to recent innovations in political advertising. Portions of R.C. 3517.21 date back to 1961, at which time R.C. 3599.09 included the phrase "designed to promote the election, nomination, or defeat of the candidate," which is now found in R.C. 3517.21(B)(10). The statute in a form comparable to the modern day version, including the introductory phrase "during the course of any campaign," was enacted in July 1976 as R.C. 3599.091. R.C. 3599.03, too, was in place long before anyone considered airing issue advertisements.

Under these circumstances, *Pullman* abstention dictates that this Court should abstain, even if it concludes that *Younger* does not apply. The issues of Ohio law are

6

novel and the State's interest in interpreting these important statutes regarding the conduct of Ohio elections is great. Under these circumstances, the Ohio Supreme Court should interpret these statutes before this Court should ever attempt to address their constitutionality. *See Brown v. Tidwell*, 169 F.3d 330, 333 (6th Cir. 1999) (a single decision by a Court of Appeals does not necessarily settle an issue for purposes of avoiding *Pullman* abstention).

Plaintiffs respond that, even if *Pullman* applies, this Court should proceed nevertheless because their claims are based on the application of the First Amendment and because almost three years have passed since the state administrative proceedings began. Neither of these justifications merit this Court proceeding to decide an issue that is already pending in the State courts and that requires interpretation of State statutes, where the interpretation placed on the statute could void the need to address the constitutional issues.

First, there is no doubt that *Pullman* applies in full force to an as-applied challenge, even if that challenge is based on the First Amendment. *See, e.g., Gottfried v. Medical Planning Services, Inc.*, 142 F.3d 326, 330-333 (6th Cir. 1998), *cert. denied*, 525 U.S. 1041 (1998); *Wicker v. Bd. of Ed. of Knott County*, 826 F.2d 442, 444, n. 2 (6th Cir. 1987); *Gannett Outdoor Company of Michigan v. City of Pontiac*, 1994 U.S. App. LEXIS 1019 (6th Cir. 1994) (attached as Exhibit A).

In support of their argument, Plaintiffs cite *Associated General Contractors v. Drabik*, 214 F.3d 730 (6th Cir. 2000), in which both the district court and the Sixth Circuit refused to abstain. That case, however, is readily distinguishable from this one. *AGC v. Drabik* concerned the constitutionality of a state set-aside program for minority contractors. While there was a parallel proceeding in State court, the Sixth Circuit

7

determined that "even if the Ohio Supreme Court could have avoided the federal constitutional question in [the case before it] by a decision on state law grounds . . . such a decision would not render moot the federal constitutional issue presented in the instant case." *Id.* at 740. Essentially, then the court held that there was no unsettled issue of state law that would obviate the need to address the constitutional issues. That is very different from this case, where the interpretation of the Ohio statutes, specifically the determination as to whether these long-standing statutes apply to so-called issue advertisements, is central (and preliminary to) any discussion of whether the statutes, as interpreted, square with the First Amendment.

Time has passed since the state court proceedings began. However, the passage of time has accrued to the benefit of Plaintiffs and similarly situated groups because, until the Tenth District Court of Appeals issued its decision in October of 2002, the law in Ohio was that R.C. 3517.21 and R.C. 3599.03 did not apply to issue advertisements. That decision, issued immediately before the election in November 2002, did not have a noticeable affect on the conduct of that election. Nor, interestingly enough, did that particular election spawn more Ohio cases involving "issue" advocacy. So, while time has passed, the passage of time has not injured Plaintiffs. If anyone's rights have been affected by the course of this litigation to date, it has been those who wished greater regulation of "issue" advertisements.

Furthermore, the "cost" of *Pullman* abstention refers not to the calculation of how much time has passed prior to the filing of the federal complaint, but to the delay that occurs once the federal court decides to stay its hand. Thus, the relevant discussion is whether the matter can be resolved faster in the State court proceedings already underway or in the newly filed federal action. At this time, an administrative appeal is pending

8

before the Franklin County Court of Common Pleas in the parallel action involving the U.S. Chamber. That action has been temporarily stayed at the request of the appellant, the U.S. Chamber, in the hopes that the U.S. Supreme Court's decision in *McConnell v. Federal Election Commission* may resolve the issues presented in that case (and this one). Nevertheless, the Ohio courts can certainly resolve that action more quickly than this action can proceed through this Court and the Sixth Circuit Court of Appeals. Federal courts abstain under *Pullman* even where no state court action is currently pending. This Court should certainly abstain where not one, but two different state court actions are currently pending.

### C.     The Cases Cited By Plaintiffs Are Distinguishable.

Finally, Plaintiffs cite a number of cases in support of the general proposition that federal courts adjudicate cases similar to this one on a routine basis. Plaintiffs' Memorandum in Opposition to Motion to Dismiss, at 11, 19, n.1. Plaintiffs are incorrect, however, as each of the cases is distinguishable.

Many challenges to campaign finance laws arise as facial challenges to newly enacted statutes that unambiguously regulate some aspect of campaign finance, a procedural posture that does not raise the concerns addressed in either *Younger* or *Pullman*, so long as the challenge is filed before state regulatory proceedings begin. Such is the case in the decisions cited by Plaintiffs, not one of which involves a parallel state court proceeding. Accordingly, these decisions do not address the issues presented by this case. *See Citizens for Responsible Government v. Davidson*, 236 F.3d 1174 (10th Cir. 2000) (facial challenge to newly-enacted unambiguous statute -- no discussion of parallel state court action or abstention); *Vermont Right to Life v. Sorrell*, 221 F.3d 376 (2nd Cir. 2000) (facial challenge to newly enacted statute -- no parallel state court

9

proceeding); *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003) (California Supreme Court had already placed narrowing construction on state statute – no pending court action or discussion of abstention); *National Federation of Republican Assemblies v. United States*, 218 F. Supp.2d 1300 (S.D. Ala. 2002) (challenge to federal statute); *Chamber of Commerce v. Moore*, 288 F.3d 187 (2002) (federal court action initiated prior to any state court proceedings); *New Hampshire Right to Life v. Gardner*, 99 F.3d 8, 10 (1st Cir. 1996) ("pre-enforcement facial challenge" to statutory cap on spending); *Michigan State Chamber of Commerce v. Austin*, 788 F.2d 1178 (6th Cir. 1986) (no pending state court action – no discussion of abstention doctrines); *New York Civil Liberties Union, Inc. v. Acito*, 459 F. Supp. 75 (1978) (recently enacted statute and no currently pending State court action, thus no discussion of *Younger* abstention).[1]

This case, in contrast, involves both an ongoing state administrative proceeding that Plaintiffs seek to circumvent by a dash to federal court and unsettled questions of state law that alter the constitutional analysis that Plaintiffs ask this Court to conduct. Under these circumstances, as well as in light of the fact that this Court's jurisdiction over declaratory judgment actions is discretionary in the first instance, this Court should abstain.

---

[1] Nor is an Ohio decision regarding Ohio's Declaratory Judgment Act, *State ex rel. Taft v. Court of Common Pleas of Franklin County*, 63 Ohio St.3d 190 (1992), relevant to the question of whether a federal court should abstain.

## III. CONCLUSION

For all of the reasons set forth above, this Court should dismiss Plaintiffs' Complaint, and/or stay any decision in this case pending the outcome of the pending administrative action before the Commission and its subsequent appeal.

                Respectfully submitted,

                JIM PETRO
                Attorney General

                */s/ Sharon A. Jennings*
                Sharon A. Jennings (0055501)
                Assistant Attorney General
                Constitutional Offices Section
                30 East Broad Street, 17th Floor
                Columbus, Ohio 43215-3428
                (614) 466-2872
                (614) 728-7592 (fax)

                *Counsel for Defendant*
                *Ohio Elections Commission*
                *and the Commissioners*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Reply was sent via regular U.S. Mail, postage prepaid, this 18th day of September, 2003, to:

William M. Todd
Squire, Sanders & Dempsey L.L.P
1300 Huntington Center
41 South High Street
Columbus, Ohio 43215-6197
*Counsel for Plaintiffs*

Clifford O. Arnebeck, Jr.
1351 King Ave., 1st floor
Columbus, Ohio 43212
*Counsel for the Alliance for Democracy*

Edward B. Foley
David Goldberger
55 West 12th Avenue
Columbus, Ohio 43210
*Counsel for Common Cause/Ohio*

Donald J. McTigue
3886 North High Street
Columbus, Ohio 43214
*Counsel for Common Cause/Ohio*

Sharon A. Jennings
Assistant Attorney General

*f:\counsel\sharonj\cases\citizens v. oec\reply mtd*

GANNETT OUTDOOR COMPANY OF MICHIGAN, Plaintiff/Counterdefendant/Appellant/Cross-Appellee v. CITY OF PONTIAC, Defendant/Counterplaintiff/Appellee/Cross-Appellant, and BRUCE RICHARDS and FLORENTINE GALLERO, Defendants/Appellees/Cross-Appellants.

No. 92-1598, 92-1622

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

1994 U.S. App. LEXIS 1019

January 19, 1994, Filed

NOTICE:

[*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

SUBSEQUENT HISTORY: Reported in Table Case Format at: *16 F.3d 1219, 1994 U.S. App. LEXIS 9109*.

PRIOR HISTORY: ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN. District No. 88-74902. Friedman, District Judge.

DISPOSITION: VACATED and REMANDED

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff advertising company appealed from a judgment from the United States District Court for the Eastern District of Michigan, which resolved the advertising company's *42 U.S.C.S. § 1983* and First Amendment claims in favor of defendants, a city and its officials. The city and its officials cross-appealed the district court's resolution of the state law issues in favor of the advertising company.

OVERVIEW: The city revoked sign permits that it had issued to the advertising company. The advertising company filed an action alleging that the city and its officials exceeded their authority under Michigan's Home Rule Act (Act), Mich. Comp. Laws Ann. § 117.41(5). That matter also raised a First Amendment claim, and the advertising company sought mandamus relief. Following removal, the district court remanded the state law claims to the state court. After its initial decision was remanded, the district court found in favor of the advertising company with regard to certain issues that arose under the Act. The district court found in favor of the city and its officials with regard to the First Amendment claim. The parties appealed. The court vacated the opinion and directed the district court to stay the litigation pending the resolution of the state court proceedings. The Pullman doctrine required abstention when state court construction of an unclear state statute could avoid the need to resolve constitutional issues. Because the advertising company's claim under the Act was before the state court, a stay pending the resolution of that proceeding was appropriate under the Pullman doctrine.

OUTCOME: The court vacated the district court's judgment in the advertising company's action under the Act, § 1983, and the First Amendment. The matter was remanded with instructions to stay the proceedings pending resolution of the state law claims in state court.

CORE TERMS: state law, first amendment, zoning ordinance, federal constitutional, dispositive, abstention, ordinance, pending resolution, summary judgment, equal protection, deferral, obviate, constitutional issues

LexisNexis (TM) HEADNOTES - Core Concepts:

JUDGES: BEFORE: MILBURN and NORRIS, Circuit Judges; and WISEMAN, District Judge. n1

---

n1 The Honorable Thomas A. Wiseman, Jr., U.S. District Judge for the Middle District of Tennessee, sitting by designation.

EXHIBIT A

OPINIONBY: THOMAS A. WISEMAN, JR.

OPINION: WISEMAN, District Judge. This case, which is before the court of appeals for the second time, was brought under 42 U.S.C. § 1983 and Michigan state law. Plaintiff Gannett appeals the district court's resolution of the first amendment issue in Defendants' favor, and Defendants cross-appeal the district court's resolution of the state law issues in favor of the Plaintiff.

I.

This action results from the revocation of five sign permits issued to Plaintiff. The city[*2] determined that the permits had been issued erroneously under a city zoning ordinance. Plaintiff subsequently filed a three-count complaint in Oakland County Circuit Court. Count I sought relief under 42 U.S.C. § 1983 on the grounds that city officials violated Gannett's first amendment right to free expression and fourteenth amendment rights to due process and equal protection. Count II requested a writ of mandamus to compel the city to reissue the permits and to take all necessary action to allow Gannett to erect the signs. With respect to Count II, Gannett contended that the building inspectors had misinterpreted the ordinance, which, if properly construed, would permit the erection of its signs. Count III alleged that the building department's interpretation and application of the zoning ordinance exceeded the city's authority under Michigan's Home Rule Act, Mich. Comp. Law Ann. § 117.41(5).

Defendants removed the case to federal court. Gannett and the city filed cross motions for summary judgment. In a July 19, 1989, order, the district court granted summary judgment for the city on the due process and equal protection claims of Count I, while[*3] taking the first amendment claim under advisement. The court remanded the state law claims of Counts II and III to the Oakland County Circuit Court. Gannett apparently has not pursued the state law claims there.

On August 17, 1989, the district court granted summary judgment for the city on the first amendment claim of Count I. Gannett filed a motion for reconsideration, which was denied. Gannett then appealed. In an unpublished per curiam Opinion issued on November 22, 1991, this court held that the only issue properly subject to appellate review was the district court's ruling on the first amendment issue. It found that Gannett did not file a timely appeal as to the district court's remand of the state law claims. The court, however, vacated the district court's decision on the first amendment claim and remanded the action specifically "for consideration of the state law issue of whether the Pontiac Building Department's interpretation of the zoning ordinance is invalid in light of the provisions of the ordinance itself and the Michigan Home Rule Act." The court stated that although the Plaintiff's state law claims had been remanded to the state courts, the district court should[*4] consider the "potentially dispositive" state law issues. The court stated that the district court should have followed the principle of not deciding a question of federal constitutional law if the case could be decided on state law grounds. See *Schmidt v. Oakland Unified School District*, 457 U.S. 594, 73 L. Ed. 2d 245, 102 S. Ct. 2612 (1982); *Miami University Associated Student Government v. Shriver*, 735 F.2d 201 (6th Cir. 1984).

On remand, in a March 19, 1992, opinion, the district court decided both state law issues in favor of Gannett (holding that they were in fact "dispositive"), but nevertheless held that in order to decide Gannett's § 1983 claim, it must consider the constitutional questions. The court adopted the reasoning from its August 17 opinion, and held that despite the fact that state law was violated, Gannett had not established a violation of § 1983.

The parties have both appealed from the district court's March 19 opinion, Plaintiff arguing initially that this court should summarily reverse the district court because the district court did not decide the § 1983 claim in Plaintiff's favor after deciding the state law issues in its favor. [*5] Plaintiff argued that this court had indicated to the district court that the state law issues would be "dispositive" of the Plaintiff's § 1983 claim. The motion for summary reversal was denied.

On this appeal, the Defendants argue that the district court should not have decided the state law issues because the Plaintiff had not exhausted his administrative remedies, and that the district court was wrong on the merits in its analysis of the state law issues. The Defendants further argue that the district court should not have even considered the constitutional issues on remand, because the Sixth Circuit panel told the district court on remand to avoid the constitutional issues if possible. The Plaintiff argues on appeal that the district court was in error in its constitutional analysis.

II.

In its previous opinion, this court held that the district court should not have reached the constitutional questions without first considering the potentially dispositive state law issues. On remand the district court held in Gannett's favor on the state law issues, indicating that there was no need to decide the constitutional

questions. Gannett has admitted that resolution of the state law [*6] issues in its favor would remove any claim under § 1983. Although the district court ruled in Gannett's favor on the state law issues, it recognized that it could not enter judgment on the state law claims because these claims had been remanded to state court. The district court went on, therefore, to consider the first amendment issues raised by Gannett's § 1983 claim. Instead of going on to consider the constitutional question, however, the district court should have stayed the proceedings pending resolution of Gannett's state law claims in state court.

A stay in this case is appropriate under the Pullman doctrine developed in *Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 85 L. Ed. 971, 61 S. Ct. 643 (1941)*. In Pullman, the Supreme Court held that when state court construction of an unclear state statute might narrow or eliminate a federal constitutional question, abstention may be justified under principles of comity in order to avoid "needless friction with state policies." *Id. at 500*. In *Tyler v. Collins, 709 F.2d 1106*, (6th Cir. 1983), the Sixth Circuit established two requirements for Pullman[*7] abstention: an unclear state law and the likelihood that a clarification of the state law would obviate the necessity of deciding the federal constitutional question. *Id. at 1108*. Both requirements are met in this case. The zoning ordinance in question is unclear, and construction of the statute in Gannett's favor would eliminate the necessity of the district court deciding whether the ordinance is consistent with the first amendment.

The Pullman doctrine was applied to a case similar to the instant litigation in *Chez Sez III Corp. v. Union, 945 F.2d 628 (3rd Cir. 1991)*. In Chez Sez, the district court was presented with federal constitutional and state law issues concerning the application of the defendant's zoning ordinance to the plaintiff's business. Concluding that the subject ordinance was amenable to a construction by the state courts which would obviate the need for federal adjudication of the constitutional issue, the district court abstained from such consideration pending a ruling by the state court on the proper interpretation of the ordinance. *Id. at 630*. On appeal, the[*8] Third Circuit agreed.

A stay is especially appropriate in this case because the state law claims have already been remanded to state court. The Supreme Court has repeatedly recognized that the Pullman "abstention" doctrine does not require a district court to dismiss a case; a district court may also stay proceedings pending resolution of state law claims in state court. E.g., *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 10, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)*. In recognition of the propriety of stay orders under the Pullman doctrine, the Supreme Court has recently suggested that "it would be preferable to speak of Pullman 'deferral'" rather than Pullman abstention. *Growe v. Emison, 122 L. Ed. 2d 388, 113 S. Ct. 1075, 1080 n.1 (1993)*. Under the circumstances of this case, we conclude that Pullman deferral is appropriate.

For the forgoing reasons we VACATE the district court opinion, and REMAND the case with instructions to the district court to stay the proceedings pending resolution of the state law claims in state court.